FILED

DEC -9 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re ) Case No. 10-35071-A-12L
)
PRATT VINEYARDS, LLC, )
)
)
Debtor. )
)
_____ )

**MEMORANDUM**

The chapter 12 debtor has proposed a plan of reorganization. A secured creditor, ReProp Investments, Inc., objects to the plan's confirmation, asserting that the plan is not feasible and that its treatment of its secured claim does not comply with 11 U.S.C. § 1225(a)(5)(B) grounds.

As filed, the plan proposes monthly payments of $4,650 for 36 months. The only secured claim to be paid belongs to ReProp. General unsecured creditors, who hold claims totaling $32,500 will receive a 100% dividend. Including trustee compensation, estimated at 10% of the amount distributed to unsecured creditors, it will take approximately $933 a month to retire the unsecured claims over 36 months.

According to ReProp's proof of claim, it was owed $719,250.14 on the date the bankruptcy case was filed. The promissory note executed by the debtor provides for interest

accrual at the rate of 12.5% and a maturity date of June 1, 2011. No objection has been filed to the proof of claim.

As filed, the plan proposes to pay $3,865 a month for 26 years on account of ReProp's secured claim. The claim will continue to be secured by its existing real and personal collateral and will accrue interest at the rate of 4.75%.[1]

At the confirmation hearing, the debtor amended the plan to require payment of ReProp's claim in 16, rather than 26, years and to increase the monthly distribution to ReProp to $4,517. However, with interest at 4.75%, a principal balance of $719,250.14, and a monthly payment of $4,517, it would take approximately 252 months to pay ReProp's claim in full. Thus, at the end of 16 years, there will be a remaining principal of more than $240,000 that must be paid by the debtor.

Section 1225(a)(6) requires that a chapter 12 debtor prove that it will be able to make all payments required by the plan. In other words, the plan must be feasible. ReProp asserts that the debtor will be unable to make the required payments. The court agrees.

The members of the debtor, David and Kim Pratt, are chapter 13 debtors in a related case, Case No. 09-36899. They reported in their individual case that their interest in the chapter 12

---

[1] Because the plan requires that approximately $209 be paid to counsel for the debtor and a further $933 be paid to the unsecured creditors and the trustee, there will be only $3,508 available to pay ReProp. As written, then, the plan is not feasible because it will not fund the $3,865 dividend promised ReProp. This problem is exacerbated by the oral amendment to the plan which requires that ReProp receive $4,517 a month.

debtor had no value.[2]  Further, given the minimal income being received by the Pratts from the chapter 12 debtor, approximately $2,200 a month, and given that their chapter 13 plan will pay only a 1% dividend to unsecured creditors over a 36-month plan duration, it is unlikely the chapter 12 debtor will be receiving any equity infusions from the Pratts.

The debtor's tax records do not paint a pretty picture.  In 2009, the debtor reported a net loss of more than $88,000.  Apparently, this financial performance was not unusual.  The 2009 federal income tax return reports that the Pratts' capital accounts were ($627,254), indicating that the debtor had been reporting income losses for many years.

This picture does not improve even when one considers the tax returns of the related entity, DK Cellars, which merged into the debtor in March 2010.  As explained to the court, the debtor grows the grapes which are made into wine by DK Cellars and then sold to the public.

DK Cellars' tax return for 2009 reported business income of $21,213.  Adding the depreciation expense claimed reported on DK Cellars' 2009 tax return brings its net income up to just $45,639 in 2009.  Combined with the loss reported by the debtor, the two entities were still operating at a loss.

And, like the tax returns of the debtor, the returns of DK Cellars indicate a history of financial loss.  In 2009, the

---

[2] Not only does the Pratt's Schedule B indicate that their membership interest in Pratt Vineyards has no value; it also indicates that their interest in a related company, DK Cellars, has no value.  These two entities were merged in March 2010.

capital accounts of the equity owners, the Pratts, was ($365,570).

While past financial performance is significant, that performance alone is not determinative. If it were, many debtors would be unable to prove the feasibility of a reorganization plan.

The court heard lengthy testimony from David Pratt regarding the debtor's efforts to become profitable and the reasons for the dismal financial performance of the debtor and DK Cellars.

As the court understands it, debtor's financial difficulties have their root in the construction of the winery. In 2004 and 2005, while the winery was being constructed and occupied by the debtor and DK Cellars, the Pratts exhausted their own financial resources. This prompted them to turn to ReProp which provided the financing to complete the winery.

In connection with the financing, the Pratts provided ReProp with projections of sales from 2006 through 2008 for the debtor/DK Cellars. The table below recounts their projections and the corresponding performance:

|            | 2006      | 2007      | 2008      | 2009      |
|------------|-----------|-----------|-----------|-----------|
| **Projected** | $144,200 | $201,000 | $264,000 | n/a |
| **Actual** | $143,113 | $168,791 | $274,582 | $227,253 |
| **Difference** | ($1,087) | ($32,239) | $10,582 | n/a |

The table includes the sales of the debtor/DK Cellars in 2009. The debtor did not provide a projection for 2009 to ReProp when it applied for financing. The table includes the sales from 2009 for comparison purposes. It shows a significant

Case 10-35071    Filed 12/09/10    Doc 89

deterioration in sales. This is particularly important because at the confirmation hearing Mr. Pratt testified that he expected sales of $188,978 in 2010 and $186,730 for 2011. The sales for 2009, 2010, and 2011, then, do not suggest a trend indicative of an ability to successfully reorganize.

To be sure, the debtor believes that even with sales in the neighborhood of $190,000 it can pay its operating expenses and fund the proposed plan. However, the margin for error is razor thin. According to the 2010 projection offered at the hearing, Exhibit M, the debtor projects operating expenses of $127,554 in 2010 and sales of $188,978, leaving $61,424 to make plan payments of $55,800. The debtor will have approximately $5,600 to spare.

However, because the debtor amended the plan, the monthly plan payment will increase by approximately $652. This will consume the $5,600 surplus and more.

And, even if the increase in the plan payment is not retroactive, the projections for 2011 are no better. In fact, they are worse. They show $186,730 in sales, and $130,762 in operating expenses. The net amount of $55,968 is barely enough to satisfy the $55,800 in plan payments even assuming they remain at $4,650 a month. If the plan payments increase by $652 a month, the debtor's shortfall in available income increases.

Even if the financial forecast can be massaged to a breakeven point, the forecast departs materially from the debtor's history and is not credible. Essentially, the debtor's business is a relatively new one, and it has never been profitable. The court does not believe this likely to change, at least with the debt load that the debtor must service.

There is a further feasibility problem. The plan, as amended, does not fully amortize ReProp's claim. As indicated above, when it matures in 16 years, there will be a balance of approximately $240,000. There is nothing in the record that permits the court to conclude that the debtor will be able to pay this sizeable lump sum when it falls due.

In appears, then, that the debtor/DK Cellars expanded the winery on a shoestring and out of financial desperation incurred an expensive short-term loan from ReProp. When sales did not increase as projected, they defaulted on the obligation owed to ReProp and now the debtor hopes to turn that financing into a long-term obligation. Even though such long-term financing is not available to this debtor in the marketplace, such a plan might be confirmable provided it is feasible. Having proposed a long-term maturity, the debtor is required to demonstrate its long-term prospects. The debtor has not met this burden.

There is further reason to doubt the debtor's financial viability. As noted above, the Pratts filed a chapter 13 bankruptcy in 2009. In their schedules they valued this debtor/DK Cellars as having no value. The value of a corporate entity is a reflection of both its assets and its ability to make a profit. The fact that the Pratts have informed the court in their own bankruptcy that the debtor has no value, is an admission that the debtor's financial viability is marginal at best.

Therefore, without the prospect of a further equity infusion or a sale of the vineyard or the winery, the court concludes that the debtor cannot successfully reorganize. It is unnecessary to

address the other objections raised by the creditor.

A separate order will be entered denying confirmation of the plan.

Dated: December 9, 2010

By the Court

Michael S. McManus, Judge
United States Bankruptcy Court

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Scott CoBen
1214 F St
Sacramento, CA 95814

Stephen Arnot
888 SW Fifth Avenue, Suite 300
Portland, OR 92704

Lawrence Loheit
PO Box 1858
Sacramento, CA 95812-1858

Dated: December 9, 2010

*Susan C. Cox*
Susan C. Cox
Judicial Assistant to Judge McManus